## Duquesne Light Company, Appellant, *v.* Duff.

*Townships — Townships of first class — Highways — Act of April 28, 1899, P. L. 104—Electric companies—Unlawful erection of poles—Rights of abutting owners—Interference—Injunction.*

1. The only servitude imposed on land appropriated for a rural highway is the right to construct and maintain a safe and convenient roadway thereon, and the public acquires a mere right of passage with the powers incident to that right; in such case the

owner retains the fee, and may use the land for any purpose not inconsistent with the easement acquired by the public.

2. Under the Act of April 28, 1899, P. L. 104, classifying townships, a township of the first class is not turned into a borough or city, or anything resembling one, and its highways are not subject to the servitude of urban necessities and conveniences, other than the ordinary easement of passage by the public.

3. An electric light company having a contract with the commissioners of a township of the first class to light the highways of the township has no right to place its poles and wires for such purpose upon a highway without the consent of the abutting owners, and a bill in equity to restrain an abutting owner from interfering with the erection on the highway of such poles and wires, is properly dismissed.

Argued Oct. 15, 1915.   Appeal, No. 159, Oct. T., 1915, by plaintiff, from decree of C. P. Allegheny Co., Oct. T., 1913, No. 2432, refusing an injunction, in case of Duquesne Light Company v. Harry Duff.   Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Bill in equity for an injunction to restrain defendant from interfering with plaintiff in the erection of poles in front of defendant's land.   Before SHAFER, P. J.

The opinion of the Supreme Court states the facts.

The court on final hearing refused the injunction and dismissed the bill.   Plaintiff appealed.

*Error assigned* was the decree of the court.

*David A. Reed,* of *Reed, Smith, Shaw & Beal,* with him *John G. Frazer,* for appellant.

*Elder W. Marshall,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1916:
The sole question in the case is whether an electric light company, having a contract with the commissioners of a township of the first class to light its highways,

has the right to place its poles and wires upon the highways for such purpose without the consent of the abutting owners. We are not unmindful of the conflict of opinion as to whether an electric, telephone or telegraph line constitutes an additional servitude on the land occupied as a highway. A distinguished legal author has said that "practically the only point that the courts are in harmony on is that there is an irreconcilable conflict in the decisions." There is, however, no conflict in our own decisions and the principle is announced and has been consistently adhered to that the only servitude imposed on land appropriated for a rural highway is the right to construct and maintain a safe and convenient roadway thereon, and that the public acquires a mere right of passage with the powers incident to such a right. The owner in such cases retains the fee, and may use the land for any purpose not inconsistent with the easement acquired by the public. Damages are assessed solely on the ground that the easement thus acquired is the only servitude imposed on the land. We have accordingly held that laying and maintaining a gas line, at the ordinary depth under the surface, necessarily imposes an additional burden on the land, not contemplated either by the owner or by the public authorities, where the land was appropriated for the purpose of a public road: Sterling's App., 111 Pa. 35. We applied the same principle in Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., 167 Pa. 62, where we noted the distinction between the servitude imposed on land taken for a city street for which compensation need not be made or secured, and the additional burden imposed on a rural highway for which the abutting owner must be compensated; and held that until there was legislation authorizing it, a street railway could not be constructed upon such highway without the consent of the abutting owners. The same doctrine is recognized in Hannum v. Media, Middletown, Aston & Chester Elect. Ry. Co., 200 Pa. 44.

It is clear that prior to the recent legislation classifying townships, the construction of an electric light line on a township road would require the consent of the abutting owner and would constitute an additional burden on the land for which he would be entitled to compensation. It is contended, however, by the plaintiff that this legislation subjects the highways of a township of the first class to urban necessities and conveniences, and, therefore, an electric light company may, as in a borough or city, place its poles and wires upon such highways without the consent of the abutting property owner and without compensating him for the injury he may sustain. It is claimed that as the legislation conferred on the township commissioners the authority to construct and repair public highways and "to establish lights thereon where it may be deemed expedient to do so," and generally to exercise powers similar to those of a borough or city council, it imposed additional servitudes on the highways and the servient estate of the abutting owners. The learned court below held, however, that the case under consideration was ruled by the principle announced in Dempster v. Union Traction Co., 205 Pa. 70, which holds that by the Classification Act a township of the first class is not turned into a borough or city or anything resembling one, and that its highways are not subject to the servitudes of urban necessities and conveniences other than the ordinary easement of passage by the public. We agree with the trial court's conclusion, and nothing more need be added to sustain it than the clear and forcible opinion of Mr. Justice DEAN in the Dempster case. He reviews our cases on the subject, directs attention to the distinction between the rights of abutting owners on rural highways and on city and borough streets prior to the Classification Act, and discusses at length the effect of such legislation on the owners of land adjacent to highways in townships of the first class. It was there contended, as it is here, that as the legislation conferred on first

class townships the power to light the highways, etc.,
it imposed additional burdens for like purposes on the
highways of the newly created township.   There is
nothing in the legislation indicating an intention to
create additional servitudes or burdens of any charac-
ter on such highways, or to authorize the township
commissioners to do so.   Its purpose, as disclosed by
the preamble to the act, was to give first class townships
a "municipal government having greater powers than
are now possessed by the local governments of town-
ships under the existing law."   It is expressly provided
in the act that the then existing legislation relating to
townships should continue until changed, modified or
repealed by legislation relating expressly thereto.   It is
apparent that, under the Classification Act, while great-
er powers were conferred on the municipal government,
there was no change in the township, its organization
and the control over its highways except such as was
expressly made by the legislation.   When land is taken
for a rural highway, the only servitude contemplated
by the public authorities and the owner is the well un-
derstood burdens of a right of passage by the public
with its incidental powers, and damages are awarded
the owner for the imposition of that and no other servi-
tude upon the land.   The appropriation of land for a
highway is a taking for public use within the intend-
ment of the Constitution, and if any additional servitude
is created other than the one originally imposed it must
be with the consent of the owner or for compensation
made or secured to him.   There is no provision in the
Classification Act for such compensation; and, as al-
ready observed, there is no intimation in the act of an
intention to change the rights of owners of land abut-
ting on highways, nor does the act declare that a town-
ship of the first class shall possess any of the powers
of a borough or city other than those expressly granted.
In his opinion in the Dempster case, supra, Mr. Justice
DEAN says (76), inter alia: "By the legislation con-

.cerning it a township of the first class was not turned into a borough or anything resembling one, any more than that legislation turned it into a city of the first class......The act of classification does not attempt to create a hybrid borough, neither township nor borough; it obviously intends to preserve the old township organization with all its powers and duties except where it expressly enacts otherwise......Nowhere in the act is it intimated, that as to existing roads and highways, have the commissioners any other or greater power than theretofore existed as to the imposition of an additional servitude, such as street railways.......Calling the township a first class township did not make it a borough in name, nor did its physical characteristics make it one in fact. It is not enough that many of its wants and perhaps necessities are those of a borough or city, and that some of these the legislature attempted to enumerate; street railways are not one of them; legislative silence excludes them."

Decree affirmed.