436 F.2d 1297
 RKO-STANLEY WARNER THEATRES, INC., a corporation, Appellant,
v.
MELLON NATIONAL BANK AND TRUST COMPANY, a National Banking
corporation, The City of Pittsburgh and Urban
Redevelopment Authority of Pittsburgh.
 No. 18784.
 United States Court of Appeals, Third Circuit.
 Argued Sept. 30, 1970.
Decided Dec. 29, 1970, As Amended Dec. 30, 1970, Rehearing
Denied Jan. 27, 1971.
 
 David F. Alpern, Alpern & Alpern, Pittsburgh, Pa., for appellant.
 Thomas S. White, Asst. City Sol., Pittsburgh, Pa., for appellee, City of Pittsburgh.
 J. Tomlinson Fort, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee, Mellon National Bank.
 William J. Tarter, Pittsburgh, Pa. (Marshall J. Conn, Pittsburgh, Pa., on the brief), for appellee, Urban Redevelopment development Authority of Pittsburgh.
 Before GANEY, VAN DUSEN and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 The primary question presented by this appeal is whether an easement can be acquired by prescription in and above a sidewalk, title to which is in private hands subject to an easement of passage in favor of the public, by regular use of such sidewalk to maintain a marquee in front of an abutting building and to change the signs on such marquee.
 
 
 2
 Alleging that the construction of a proposed building on property formerly constituting a public sidewalk would interfere with an easement in its favor, RKO-Stanley Warner Theatres, Inc. (RKO) brought this suit against the Mellon National Bank and Trust Company (Mellon Bank), the City of Pittsburgh, and the Urban Redevelopment Authority of the City of Pittsburgh. The complaint sought to enjoin the City of Pittsburgh from vacating the public sidewalk and from issuing a building permit for the construction of a new building over the sidewalk, and further sought to enjoin Mellon Bank from constructing a building over the land formerly constituting the sidewalk.[1] The City of Pittsburgh and the Urban Redevelopment Authority of the City of Pittsburgh moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief could be granted, and Mellon Bank filed an answer and moved pursuant to Rule 12(c) for judgment on the pleadings. The district court granted all three motions.[2] Since this is an appeal from the dismissal of the complaint as to all defendants, the allegations of the complaint must be taken as true.[3]
 
 
 3
 The complaint charges that the plaintiff, RKO, owns and operates a motion picture theatre in Pittsburgh, Pennsylvania. The theatre building, with a marquee extending over the sidewalk in front of it, was erected in 1912. One of the defendants, Mellon Bank, owned and operated a bank adjacent to the theatre from 1935 until 1968. Prior to demolition of Mellon Bank's building in 1968, the theatre and the bank building existed on a common building line. Paragraph 6 of the complaint alleges:
 
 
 4
 From the time the said theater and marquee were erected and the time when said bank building was erected the Plaintiff, and the predecessor operators of said theater, have used the sidewalk in front of said bank building and the air space above the same for the maintenance of and the changing of signs on, the said marquee; the use of said sidewalk and said air space has been uninterrupted, continuous and adverse for a period in excess of twenty-one (21) years.[4]
 
 
 5
 In May 1969 the defendant City of Pittsburgh vacated the sidewalk in front of the bank building.[5] Vacation of the sidewalk relieved Mellon Bank of an easement in favor of the public and gave Mellon Bank a fee simple title, free of all encumbrances, to the 10-foot wide strip of land that formerly constituted the public sidewalk. In August 1969 RKO learned that Mellon Bank planned to construct a new building on its property that would extend over this 10-foot wide strip, and that the City of Pittsburgh would issue a building permit for the building as planned. Construction of a building over the 10-foot wide strip that formerly constituted the public sidewalk would physically block one side of RKO's marquee from public view and would prevent RKO from maintaining its marquee and changing the signs thereon.
 
 I.
 
 6
 THE DISMISSAL AS TO MELLON NATIONAL BANK AND TRUST COMPANY
 
 
 7
 We must decide whether these allegations, taken as true, would establish an easement in favor of RKO to maintain its marquee and change the signs thereon.[6] RKO does not claim an easement to light and air, but rather an easement to go upon the sidewalk in front of Mellon Bank and erect ladders in order to maintain its marquee and change the signs thereon.[7] Further, RKO does not claim an easement against the City of Pittsburgh, but rather against the abutting fee owner Mellon Bank.[8] Cases holding that rights against a city or the public cannot be gained by prescription therefore have no application to the claim against Mellon Bank.[9]
 
 
 8
 The basic question is whether easements can be acquired by prescription in property constituting a public sidewalk, which is 'for all intents and purposes a part of the (abutting) owner's premises subject only to the public's easement of passage.'[10] Easements by prescription are created by adverse, open, notorious, continuous, and uninterrupted use of land for 21 years.[11] The factual allegations of the complaint and the reasonable inferences that may be drawn therefrom could, if proven, establish that RKO's use of the sidewalk in front of Mellon Bank's building was open and notorious.[12] The complaint also alleges that RKO's use of the sidewalk was continuous[13] and uninterrupted[14] for a period in excess of the prescriptive period, and that RKO's use was at all times adverse to Mellon Bank.[15] The complaint thus alleges that all of the requirements necessary to establish a prescriptive easement are present. The difficulty posed by this case is the presence of the public easement. Any use of the sidewalk within the scope of the public easement is not adverse to Mellon Bank and cannot serve as the basis for the acquisition of a prescriptive easement.[16]
 
 
 9
 The Pennsylvania courts have not precisely defined the scope of the public easement in sidewalks. The early Pennsylvania decisions characterized the easement as an 'easement of passage,'[17] but added that the public's right of passage comprehended 'the powers incident to such a right.'[18] The powers incident to the right of passage include the right to obstruct temporarily the public way for business necessity, accidents, or the ordinary exigencies of travel.[19] There is some support in the Pennsylvania decisions for the proposition that the right to obstruct temporarily is merely incidental to the right of passage, and belongs only to members of the public engaged in traveling over the public way.[20] Other Pennsylvania decisions indicate that the right to obstruct temporarily belongs to members of the public whose reasonable commercial needs require such temporary obstruction,[21] and the authorities are generally in agreement with this interpretation.[22] But the scope of the public easement is not broad enough to allow constantly recurring, although temporary, obstructions to the public way. While the abutting fee owner may have power to impose frequent temporary obstructions on the public way in order to serve his own reasonable commercial needs,[23] the Pennsylvania decisions clearly establish that an abutting fee owner may not obstruct the public sidewalk owned by another abutting fee owner on a recurring basis in order to serve commercial needs.[24] Such use of the public sidewalk would amount to an appropriation of another's property for private commercial purposes.[25]
 
 
 10
 Recent Pennsylvania decisions have expanded the scope of the public easement, holding that the rights of the public are regarded as being in the exclusive possession of the municipality, which may authorize the use of any public sidewalk for any public purpose.[26] But in order to fall within this expanded scope of the public easement, a use must be specifically authorized by the municipality; and such authorization 'must be by legislative grant in clear words or by unavoidable implication.'[27]
 
 
 11
 While the public's lawful use of a sidewalk is restricted to uses within the scope of the public easement, the abutting fee owner is not so restricted in his use of the sidewalk. The abutting owner has the right to use the sidewalk in any manner not inconsistent with the public easement.[28] He also has the right to use a portion of the sidewalk in a reasonable manner for a temporary period, and this right is not subservient to the right of the traveling public.[29]
 
 
 12
 No use outside the scope of the public easement may be made of a sidewalk in opposition to or over the objection of the abutting fee owner. The abutting fee owner's private right is superior to any other private right, and any private use of a sidewalk constitutes a trespassory invasion of the property rights of the abutting fee owner.[30] The Pennsylvania decisions have long made clear that the abutting owner can prevent such uses of the public way.[31]
 
 
 13
 These principles demonstrate that the complaint states a claim against Mellon Bank upon which relief can be granted. Easements against the abutting owner can be established by prescription in a sidewalk, so long as the use is outside the scope of the public easement. The abutting fee owner retains certain primary rights in the sidewalk, and those rights can be lost by prescription.[32] The public policy which prevents the acquisition of rights against a municipality or the public by prescription[33] does not prevent the acquisition of rights by prescription against a private entity.[34]
 
 
 14
 For the foregoing reasons, that portion of the January 28, 1970, district court order dismissing the complaint as to Mellon Bank will be vacated and the case remanded for further proceedings in accordance with this opinion.
 
 II.
 
 15
 THE DISMISSAL AS TO THE URBAN REDEVELOPMENT AUTHORITY OF THE CITY OF PITTSBURGH
 
 
 16
 Aside from a general prayer for 'such other order as the Court, in its discretion, deems necessary,' the complaint requests no specific relief against the Urban Redevelopment Authority of the City of Pittsburgh, whereas injunctive relief is sought against the City of Pittsburgh and Mellon Bank. Rule 8(a)(3) of the Federal Rules of Civil Procedure provides in relevant part:
 
 
 17
 Claims for Relief. A pleading which sets forth a claim for relief * * * shall contain * * * a demand for judgment for the relief to which (the pleader) deems himself entitled. Relief in the alternative or of several different types may be demanded.
 
 
 18
 The complaint clearly does not meet the requirements of this rule with respect to the defendant Urban Redevelopment Authority of the City of Pittsburgh.
 
 
 19
 The complaint alleges only that the Authority, together with the City of Pittsburgh, contacted RKO in bad faith to propose the remodeling of RKO's theatre, without mentioning the proposed vacation of the sidewalk in front of the bank building, and that the Authority and the City of Pittsburgh led RKO to believe that a new bank building would be erected only on the site of the earlier bank building. Aside from this alleged misleading, the complaint does not charge the Authority with any action whatsoever. The complaint does not indicate how RKO was harmed by this alleged misleading, or otherwise indicate the basis of RKO's claim against the Authority. The Urban Redevelopment Authority of the City of Pittsburgh is an instrumentality of the Commonwealth of Pennsylvania,[35] and, as such, is not liable for damages resulting from torts committed in the exercise of governmental powers or in the performance of governmental duties.[36] Furthermore, it is difficult to imagine how injunctive relief against the Authority could help RKO in its effort to nullify the vacating ordinance and the building permit, and to prevent construction of the new bank building.
 
 
 20
 For the above reasons, the dismissal of the complaint as to the Urban Redevelopment Authority of the City of Pittsburgh will be affirmed.
 
 III.
 THE DISMISSAL AS TO THE CITY of PITTSBURGH
 
 21
 As noted above at page 5, public policy prevents the acquisition of prescriptive rights against a municipality and the public. The Courts will not inquire into the motive of a city in passing an ordinance, and a city cannot forfeit its right and duty to vacate public ways under appropriate circumstances, even though its employee may take misleading action.[37] It is clear that the City had the authority to vacate the sidewalks,[38] and no claim is made that there were technical defects in the passage and advertising of the vacating ordinance or in the issuance of the building permit.[39] Furthermore, RKO's property rights against Mellon Bank are not affected by such authorized governmental actions.[40]
 
 
 22
 The dismissal of the complaint as to the City of Pittsburgh will be affirmed.
 
 
 23
 The January 28, 1970 order of the district court will be affirmed except insofar as it dismisses the complaint as to Mellon Bank, which dismissal will be vacated, and the case will be remanded to the district court for further proceedings in accordance with this opinion. Costs shall be divided equally between RKO and Mellon Bank.
 
 
 
 [1]
 In the alternative, the complaint sought to order the City of Pittsburgh to revoke the vacation of the public sidewalk and the issuance of the building permit
 
 
 [2]
 Pursuant to Fed.R.Civ.P. 12(b)(6) the City of Pittsburgh's motion to dismiss, supported by an affidavit, was treated as a motion for summary judgment and disposed of as provided in Fed.R.Civ.P. 56. The affidavit in support of the City of Pittsburgh's motion to dismiss recites that the Urban Redevelopment Authority of the City of Pittsburgh obtained the consent of Mellon Bank to the vacation of the public sidewalk, and that the affiant, a representative of the Bureau of Engineers, Division of Surveys, Department of Public Works of the City of Pittsburgh, considered Mellon Bank's letter of consent as a petition of an abutting property owner for the vacation of the public sidewalk
 
 
 [3]
 See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); United States v. New Wrinkle, Inc., 342 U.S. 371, 72 S.Ct. 350, 96 L.Ed. 417 (1952)
 
 
 [4]
 The prescriptive period is 21 years. See Shaffer v. Baylor's Lake Ass'n, Inc., 392 Pa. 493, 141 A.2d 583 (1958)
 
 
 [5]
 Pittsburgh, Pa., Ordinance 270, May 19, 1969
 
 
 [6]
 In appraising the sufficiency of a complaint, the accepted rule is that
 a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
 Since on appeals from dismissals for failure to state a claim upon which relief can be granted, we must accept as true all of the plaintiff's allegations of fact, together with such reasonable inferences as may be drawn therefrom in the plaintiff's favor (see Murray v. City of Milford, Conn., 380 F.2d 468 (2d Cir. 1967)), the complaint is not insufficient for failure to allege detailed facts surrounding the erection of RKO's marquee over the public sidewalk. The Pennsylvania courts have followed the general rule that an abutting fee owner may maintain a marquee over the public sidewalk so long as it does not interfere with the public easement or constitute a public nuisance, and subject to power in the state to regulate or forbid altogether for the public benefit. See Walnut & Quince St. Corp. v. Mills, 303 Pa. 25, 154 A. 29, appeal dismissed, 284 U.S. 573, 52 S.Ct. 16, 76 L.Ed. 498 (1931). See generally 10 E. McQuillen, Municipal Corporations, 30.92 (3d ed. 1966).
 
 
 [7]
 RKO's claim is more than a claim for an easement to light and air, which can be acquired by express grant but not by prescription. See Maioriello v. Arlotta, 364 Pa. 557, 73 A.2d 374 (1950). Absent an express grant, RKO cannot therefore establish an easement to light and air. We thus do not mean to suggest that RKO can establish a right by prescription to have the side of its marquee facing the bank building seen by the public; we note, however, that the marquee has other functions such as protecting theatre patrons from inclement weather, supporting signs on the side of such marquee facing the street, etc., and the complaint alleges use of the sidewalk in front of the bank to maintain it
 
 
 [8]
 RKO claims a right to go upon the sidewalk in front of Mellon Bank's building. Unless clearly noted by express exception in a deed, title to real property bounded by streets generally extends to the center of the street in Pennsylvania. See City of Scranton v. People's Coal Co., 256 Pa. 332, 100 A. 818 (1917); Seibert v. Sebring, 55 Pa.Super. 475, 477-478 (1913). Mellon Bank's title to the property to which the alleged easement attaches has not at this point been denied. Paragraph four of the answer filed by Mellon Bank admits title to 'the property in question,' but the boundaries of that property are not clearly delineated in either the complaint or Mellon Bank's answer
 
 
 [9]
 See Commonwealth v. Moorehead, 118 Pa. 344, 12 A. 424 (1888); Guerra v. Galatic, 185 Pa.Super. 385, 137 A.2d 866 (1958) (dictum); McGuire v. City of Wilkes-Barre, 36 Pa.Super. 418 (1908)
 
 
 [10]
 Westinghouse Elec. Corp. v. United Elec. Workers Local 601, 353 Pa. 446, 456, 46 A.2d 16, 20 (1946). The public acquires only an easement, with the fee remaining in the abutting owner subject to the public easement, irrespective of whether the public easement was acquired by dedication or condemnation. 46 South 52nd St. Corp. v. Manlin, 398 Pa. 304, 157 A.2d 381 (1960). As to dedication see Hoffman v. City of Pittsburgh, 365 Pa. 386, 75 A.2d 649 (1950). As to condemnation see William Laubach & Sons v. City of Easton, 347 Pa. 542, 32 A.2d 881 (1943); Breinig v. County of Allegheny, 332 Pa. 474, 2 A.2d 842 (1938); Sterling's Appeal, 111 Pa. 35, 2 A. 105 (1886). See generally City of Scranton v. People's Coal Co., 256 Pa. 332, 100 A. 818 (1917); Duquesne Light Co. v. Duff, 251 Pa. 607, 97 A. 82 (1916); Hindin v. Samuel, 158 Pa. Super. 539, 45 A.2d 370 (1946)
 
 
 [11]
 Shaffer v. Baylor's Lake Ass'n, Inc., 392 Pa. 493, 141 A.2d 583 (1958). Most authorities generally treat the requirement that use be open and notorious as one element or condition of adverse use. The Pennsylvania courts have apparently carved the open and notorious use requirement out of the adverse use requirement, treating it as a separate requirement necessary to establish a prescriptive easement. Compare, e.g., Restatement of Property 458 (1944) and 2 American Law of Property 8.53 (A.J. Casner ed. 1952) with Shaffer v. Baylor's Lake Ass'n, Inc., 392 Pa. 493, 141 A.2d 583 (1958)
 
 
 [12]
 The complaint does not allege in haec verba or otherwise that RKO's use of the land was open and notorious. But there can be no doubt that the complaint contains "a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); see note 6, supra
 
 
 [13]
 Undoubtedly the use in this case, like many of the most common uses that result in the creation of prescriptive easements, was nonconstant in nature. But a use nonconstant in nature may be 'continuous' as that term is used in the law of prescription. Use is 'continuous' when the use is made as occasion may demand without a break in the attitude of non-subordination that marks adverse use. Restatement of Property 459 (1944); 2 American Law of Property 8.57 (A.J. Casner ed. 1952); see Margoline v. Holefelder, 420 Pa. 544, 218 A.2d 227 (1966); Shaffer v. Baylor's Lake Ass'n, Inc., 392 Pa. 493, 141 A.2d 583 (1958)
 
 
 [14]
 An adverse use is uninterrupted when those against whom the use is adverse do not initiate and bring to successful conclusion legal proceedings or otherwise cause a cessation of the use. Restatement of Property 459 (1944); 2 American Law of Property 8.58 (A.J. Casner ed. 1952); see Margoline v. Holefelder, 420 Pa. 544, 218 A.2d 227 (1966)
 
 
 [15]
 It is noted that if a party required to respond to a pleading needs more facts, it has a right to call for them under Rule 12(e) of the Federal Rules of Civil Procedure. See United States v. Employing Plasterers Ass'n, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954)
 
 
 [16]
 Use of property within the scope of an easement in favor of the user is not adverse to the owner of the fee because such use is not wrongful as to him. See Restatement of Property 458 (1944); 2 American Law of Property 8.55 (A.J. Casner ed. 1952). See also Mitchell v. Bovard, 279 Pa. 50, 123 A. 588 (1924)
 
 
 [17]
 See, e.g., Westinghouse Elec. Corp. v. United Elec. etc. Workers Local 601, 353 Pa. 446, 456, 46 A.2d 16, 20 (1946) ('easement of passage'); Breinig v. County of Allegheny, 332 Pa. 474, 479, 2 A.2d 842, 846 (1938) ('for public use generally, for transit only'); Duquesne Light Co. v. Duff, 251 Pa. 607, 609, 97 A. 82 (1916) ('mere right of passage')
 
 
 [18]
 Duquesne Light Co. v. Duff, 251 Pa. 607, 609, 97 A. 82 (1916)
 
 
 [19]
 In Breinig v. County of Allegheny, 332 Pa. 474, 2 A.2d 842 (1938), the court stated:
 The right of passage includes the right, as against other members of the traveling public, to stop temporarily for business necessity, accident or the ordinary exigencies of travel.
 
 
 [332]
 Pa. at 479, 2 A.2d at 846
 If members of the public can exercise these rights 'as against other members of the traveling public,' they are a fortiori within the scope of the public easement and exercisable against the fee owner. Accord, Kessler v. Berger, 205 Pa. 289, 292, 54 A. 887, 888 (1903) ('The use of a highway, it is true, is for passage, but that does not prevent the pedestrian from making such stops thereon 'as business, necessity, accident, or the ordinary exigencies of travel may require").
 
 
 [20]
 Barker v. Commonwealth, 19 Pa. 412 (1852) ('The streets are common highways, designed for the use of the public in passing and repassing, and in such temporary occupancy as are incidental to the exercise of these rights, or necessarily connected with them'). See cases cited note 19 supra
 
 
 [21]
 In North Manheim Township v. Arnold, 119 Pa. 380, 13 A. 444 (1888), the court stated:
 The right of the public to the free and unobstructed use of a highway is subject, of course, to reasonable and necessary limitations. Convenient delivery * * * often necessitates the temporary obstruction of a street. This, to a reasonable extent, is not an invasion of the public right; it is a legitimate use of the highway. 119 Pa. at 389-390, 13 A. at 447.
 In Piollet v. Simmers, 106 Pa. 95 (1884), the court held at 108:
 But it is not every obstruction, irrespective of its character or purpose, that is illegal, even although not sanctioned by any express legislative or municipal authority. On the contrary, the right of the public to the free and unobstructed use of a street or way is subject to reasonable and necessary limitations. The carriage and delivery of fuel, grain, goods, etc., are legitimate uses of a street, and may result in the temporary obstruction to the right of public transit. * * * And so of the improvements of adjoining lots by digging cellars, by building, etc.; this may occasion a reasonable necessity for using the street or sidewalk for the deposit of material. Temporary obstructions of this kind are not invasions of the public easement, but simply incidents to, or limitations of it. They can be justified only when and only so long as they are reasonably necessary.
 In Commonwealth v. Passmore, 1 S. & R. 217 (Pa.1814), similar language was used at 219 and 221.
 
 
 [22]
 See, e.g., J. Dillon, Municipal Corporations 1168 (5th ed. 1911) and cases cited therein at 1857 n. 1
 
 
 [23]
 See Duquesne Light Co. v. Duff, 251 Pa. 607, 97 A. 82 (1916); North Manheim Township v. Arnold, 119 Pa. 380, 13 A. 444 (1888); Sterling's Appeal, 111 Pa. 35, 2 A. 105 (1886); Piollet v. Simmers, 106 Pa. 95, 108 (1884); Hindin v. Samuel, 158 Pa.Super. 539, 45 A.2d 370 (1946)
 
 
 [24]
 Benner v. Junker, 190 Pa. 423, 43 A. 72 (1899); Seibert v. Sebring, 55 Pa. Super. 475 (1913)
 
 
 [25]
 See Benner v. Junker, 190 Pa. 423, 43 A. 72 (1899)
 
 
 [26]
 Pittsburgh Nat'l Bank v. Equitable Gas Co., 421 Pa. 468, 220 A.2d 12, cert. denied, 385 U.S. 988, 87 S.Ct. 600, 17 L.Ed.2d 449 (1966); 46 South 52nd St. Corp. v. Manlin, 398 Pa. 304, 157 A.2d 381 (1960). See generally Note, The Use of Highways by Public Utilities in Pennsylvania and New York-- Is the Abutting Landowner Entitled to Compensation?, 71 Dick.L.Rev. 637 (1967)
 
 
 [27]
 46 South 52nd St. Corp. v. Manlin, 398 Pa. 304, 317, 157 A.2d 381, 388 (1960)
 
 
 [28]
 Duquesne Light Co. v. Duff, 251 Pa. 607, 97 A. 82 (1916); Sterling's Appeal, 111 Pa. 35, 2 A. 105 (1886); Hindin v. Samuel, 158 Pa.Super. 539, 45 A.2d 370 (1946)
 
 
 [29]
 North Manheim Township v. Arnold, 119 Pa. 380, 13 A. 444 (1888); Piollet v. Simmers, 106 Pa. 95, 108 (1884)
 
 
 [30]
 46 South 52nd St. Corp. v. Manlin, 398 Pa. 304, 312, 157 A.2d 381, 385 (1960); Benner v. Junker, 190 Pa. 423, 43 A. 72 (1899); Seibert v. Sebring, 55 Pa. Super. 475 (1913)
 
 
 [31]
 E.g., Breinig v. County of Allegheny, 332 Pa. 474, 2 A.2d 842 (1938); Hopkins v. Catasauqua Mfg. Co., 180 Pa. 199, 36 A. 735 (1897)
 
 
 [32]
 53 P.S. 1948, a statute of limitation, recognizes that private easements can be acquired in property embraced within the boundaries of a public street, and specifies that plaintiffs in the position of RKO must bring an action, 'at law or equity,' to enforce such easements within one year after the vacation of the relevant portion of the public street
 
 
 [33]
 See cases cited note 9 supra
 
 
 [34]
 Even a use that has matured into a prescriptive easement can be enjoined by the municipality if it amounts to an unlawful obstruction of the public way, for the holder of the easement can have no greater rights than the abutting fee owner. See Commonwealth v. Moorehead, 118 Pa. 344, 12 A. 424 (1888); Commonwealth v. M'Donald, 16 S. & R. 390 (Pa.1827); Seibert v. Sebring, 55 Pa. Super. 475 (1913); McGuire v. City of Wilkes-Barre, 36 Pa.Super. 418 (1908)
 
 
 [35]
 35 P.S. 1702
 
 
 [36]
 See Dillon v. York City School Dis't, 422 Pa. 103, 220 A.2d 896 (1966); Rader v. Pennsylvania Turnpike Comm'n, 407 Pa. 609, 182 A.2d 199 (1962); Boorse v. Springfield Township, 377 Pa. 109, 103 A.2d 708 (1954); Scibilia v. City of Philadelphia, 279 Pa. 549, 124 A. 273 (1924). See generally Harris v. Pennsylvania Turnpike Comm'n, 410 F.2d 1332 (3rd Cir. 1969)
 
 
 [37]
 Cohen v. Simpson Real Estate Corp., 385 Pa. 352, 355, 123 A.2d 715, 717 (1956); Titusville Amusement Co. v. Titusville Iron Works Co., 286 Pa. 561, 134 A. 481 (1926). See 53 P.S. 1672
 
 
 [38]
 See 53 P.S. 1672
 
 
 [39]
 At oral argument counsel for RKO conceded that the enactment of the vacating ordinance and the granting of the building permit had been procedurally proper
 
 
 [40]
 As noted under II above, the City of Pittsburgh is immune from a claim for damages allegedly caused by legislative actions taken in accordance with its governmental powers. In addition, 26 P.S. 1-613 does not aid RKO. The vacation of the sidewalk could not injure RKO, because any rights RKO has against Mellon Bank were not affected by the vacation. RKO would be 'injured' within the meaning of 26 P.S. 1-613 only if the vacation of the sidewalk impaired access to RKO's property. See Commonwealth v. Hession, 430 Pa. 273, 242 A.2d 432 (1968), cert. denied, 393 U.S. 1049, 89 S.Ct. 685, 21 L.Ed.2d 693 (1969)